**IN THE COURT OF THE UNITED STATES**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| JULIE A. BECKER | : | |
| 14 Monmouth Court | : | **COMPLAINT--CLASS ACTION** |
| Easton, PA 18040 | : | |
| and | : | JURY TRIAL DEMANDED |
| MICHAEL AND SHARON BLIMM, h/w | : | |
| 18 Berkley Place | : | |
| East Windsor, NJ 08520 | : | |
| and | : | |
| WALTER McCALL | : | |
| 3839 Albermarle Avenue | : | |
| Drexel Hill, PA 19026 | : | |
| and | : | NO: |
| KEVIN AND KIRSTEN SMALL, h/w | : | |
| 106 Sabine Avenue | : | |
| Narberth, PA 19072 | : | |
| and | : | |
| JACQUELYNE SHINES | : | |
| 7316 Sycamore Avenue | : | |
| Cheltenham, PA 19012 | : | |
| and | : | |
| PAUL AND JOAN DONAHUE, h/w: | | |
| 1108 Edann Rd | : | |
| Oreland, PA 19075 | : | |
| and | : | |
| DARRELL SMITH | : | |
| 813 Stanbridge Street | : | |
| Norristown, PA 19401 | : | |
| and | : | |
| MARGARET E. HILDEBRANDT | : | |
| 2165 Ridgeview Avenue | : | |
| Abington, PA 19001 | : | |
| and | : | |
| CHRISTINE C. BURKE | : | |
| 777 N. 25th Street | : | |
| Philadelphia, PA 19130 | : | |
| | : | |
| On their behalf and on behalf of | : | |
| all others similarly situated | : | |
| | : | |
| v. | : | |
| | : | |
| CHICAGO TITLE | : | |
| INSURANCE COMPANY | : | |
| 171 North Clark Street, 8th Floor | : | |
| Chicago, IL 13294 | : | |

1

and                                          :
COMMONWEALTH LAND                            :
TITLE INSURANCE CO.                          :
Two Logan Square, 5th Floor                  :
Philadelphia, PA 19103                       :
        and                                  :
FIDELITY NATIONAL TITLE                      :
INSURANCE COMPANY                            :
17911 Von Karmen Avenue, Suite 300           :
Irvine, CA 92614                             :
        and                                  :
LAWYERS TITLE                                :
INSURANCE CORPORATION                        :
101 Gateway Centre Parkway                   :
Richmond, VA 23235                           :
        and                                  :
STEWART TITLE                                :
GUARANTY COMPANY                             :
222 Kemper Stewart Building                  :
Galveston, TX 77550                          :
        and                                  :
CONESTOGA TITLE                              :
INSURANCE COMPANY                            :
123 East King Street                         :
Lancaster, PA 17602                          :
        and                                  :
FIDELITY NATIONAL TITLE                      :
INSURANCE COMPANY                            :
OF NEW YORK                                  :
2 Park Avenue, 3rd Fl.                       :
New York, NY 10016                           :
        and                                  :
FIRST AMERICAN TITLE                         :
INSURANCE COMPANY                            :
1 First American Way                         :
Santa Ana, CA 92707                          :
        and                                  :
SAVINGS ABSTRACT COMPANY, INC.               :
501 Washington Lane, Ste. 201                :
Jenkintown, PA 19046                         :
        and                                  :
ABSTRACT PROFESSIONALS, LTD.                 :
8001 Roosevelt Blvd.                         :
Philadelphia, PA 19152                       :
        and                                  :
REALTY LAND TRANSFER, LLC                    :
103 Chesley Drive, 1st Floor            :
Media, PA 19063                              :

  and         :
ARACOR SEARCH & ABSTRACT :
SERVICES, INC.      :
1617 JFK Blvd., Ste. 369   :
Philadelphia, PA 19103    :
  and         :
ABSTRACTING COMPANY  :
OF NORTHAMPTON COUNTY :
1800 Northampton Street   :
Easton, PA 18042      :
  and         :
SOUTHEASTERN ABSTRACT  :
COMPANY, INC. t/a     :
WEICHERT CLOSING SERVICES, CO. :
535 Pennsylvania Avenue, 2nd Fl :
Fort Washington, PA 19034   :
  and         :
STATEWIDE ABSTRACT GROUP, INC. :
7901 Bustleton Avenue, Ste 203  :
Philadelphia, PA 19152    :
  and         :
OLDE CITY ABSTRACT, INC.  :
1608 Walnut Street, Ste. 401   :
Philadelphia, PA 19103    :

_____

**CLASS ACTION**

Plaintiffs, and members of the class of Plaintiffs, file this Class Action lawsuit, and in support thereof, aver as follows:

**PARTIES**

1.      Defendant, Chicago Title Insurance Company, has its corporate offices located at 171 North Clark Street, 8th Floor, Chicago, IL 13294, and it is authorized to issue policies of title insurance, through its authorized agents, in the Commonwealth of Pennsylvania.

2.      Defendant Statewide Abstract Group, Inc. is a business entity operating as sole proprietorship, partnership or corporation authorized to hold settlements and closings with respect to real estate transactions.  Statewide Abstract Group, Inc. is a title agent for title insurers such as Chicago Title Insurance Company.

3.      Defendant Commonwealth Land Title Insurance Company has an office located at Two Logan Square, 5th Floor, Philadelphia, Pennsylvania 19103, and it is authorized to issue policies of title insurance, through its authorized agents, in the Commonwealth of Pennsylvania.

4.      Defendant Savings Abstract Company is a business entity operating as a sole proprietorship, partnership, or corporation authorized to hold settlements and closings with respect to real estate transactions.  Savings Abstract is a title agent for title insurers such as Commonwealth Land Title Insurance Company.

5.      Defendant Fidelity National Title Insurance Company has an office located at 17911 Von Karmen Avenue, Suite 300, Irvine California 92614, and it is authorized to issue policies of title insurance, through its authorized agents, in the Commonwealth of Pennsylvania.

4

6.      Defendant Realty Land Transfer, LLC is a business entity operating as sole proprietorship, partnership, or corporation authorized to hold settlements and closings with respect to real estate transactions.  Realty Land Transfer, LLC is a title agent for title insurers such as Fidelity National Title Insurance Company.

7.      Defendant Lawyers Title Insurance Corporation has an office located at 101 Gateway Centre Parkway, Richmond, Virginia 23235, and it is authorized to issue policies of title insurance, through its authorized agents, in the Commonwealth of Pennsylvania.

8.      Defendant Abstract Professionals, Ltd. is a business entity operating as sole proprietorship, partnership, or corporation authorized to hold settlements and closings with respect to real estate transactions.  Abstract Professionals, Ltd. is a title agent for title insurers such as Lawyers Title Insurance Corporation.

9.      Defendant Stewart Title Guaranty Company has an office located at 222 Kemper Stewart Building, Galveston, Texas 77550, and it is authorized to issue policies of title insurance, through its authorized agents, in the Commonwealth of Pennsylvania.

10.      Defendant Aracor Search and Settlement Services, Inc. is a business entity operating as sole proprietorship, partnership, or corporation authorized to hold settlements and closings with respect to real estate transactions.  Aracor Search and Settlement Services, Inc is a title agent for insurers such as Stewart Title Guaranty Company.

11.      Defendant, Conestoga Title Insurance Company, has an office located at 123 East King Street, Lancaster, Pennsylvania 17602, and it is authorized to issue policies of title insurance, through its authorized agents, in the Commonwealth of Pennsylvania.

12.     Defendant Abstracting Company of Northampton County is a business entity operating as sole proprietorship, partnership, or corporation authorized to hold settlements and closings with respect to real estate transactions.  ABCO-Abstracting Company of Northampton County is a title agent for title insurers such as Conestoga Title Insurance Company.

13.     Defendant, Fidelity National Title Insurance Company of New York has an office located at 2 Park Avenue, Third Floor, New York, NY 10016, and it is authorized to issue policies of title insurance, through its authorized agents, in the Commonwealth of Pennsylvania.

14.     Defendant Weichert Closing Services Co. is a business entity operating as sole proprietorship, partnership, or corporation authorized to hold settlements and closings with respect to real estate transactions.  Weichert Closing Services Co. is a title agent for title insurers such as Fidelity National Title Insurance Company of New York.

15.     Defendant, First American Title Insurance Company, has its corporate offices located at 1 First American Way, Santa Ana, CA 92707, and it is authorized to issue policies of title insurance, through its authorized agents, in the Commonwealth of Pennsylvania.

16.     Defendant Olde City Abstract, Inc. is a business entity operating as sole proprietorship, partnership, or corporation authorized to hold settlements and closings with respect to real estate transactions.  Old City Abstract, Inc. is a title agent for title insurers such as First American Title Insurance Company.

17.     Collectively, Commonwealth Land Title Insurance Company, Chicago Title Insurance Company, First American Title Insurance Company, Fidelity National Title Insurance Company, Fidelity National Title Insurance Company of New York,

Conestoga Title Insurance Company, Lawyers Title Insurance Company, First American Title Insurance Company and Stewart Title Insurance Company shall hereinafter be referred to as "Defendant Title Insurers".

18.    Collectively, Weichert Closing Services Co., Abstracting Company of Northampton County, Aracor Search and Settlement Services, Inc., Abstract Professionals, Ltd., Realty Land Transfer, LLC, Savings Abstract Company, and Statewide Abstract Group, Inc., and Olde City Abstract, Inc. shall hereinafter be referred to as "Defendant Title Agents".

19.    Plaintiffs consist of adult individuals who have participated in real estate settlements in the last two years.

## INTRODUCTION

20.    Defendant Title Insurers issue policies of title insurance through their agent companies.  Their title agent companies are authorized to conduct closings of real estate transactions.

21.    The title agent companies, through their employee title clerks, receive the gross proceeds of sale or the refinancing funds of a lender; give credits as the parties may agree; apportion and allocate liens, charges, costs and expenses; pay the costs and expenses of the settlement out of the proceeds of sale or the funds advanced by lender; and render an accounting to the settlement parties.

22.    The title agent companies, through their employee title clerks, render an accounting on what is known as a Settlement Sheet or HUD 1, and pays over the net proceeds of the sale to the sellers or the net proceeds of the refinancing to the borrower.

23.    The consumers who purchases title insurance for themselves and/or their lenders pay an all-inclusive insurance premium at a rate approved by the Commonwealth

of Pennsylvania to the Defendant Title Insurers, who share such premiums with their agent companies as compensation for conducting settlements.

24.     Under the all-inclusive insurance premium, neither title insurer or the title agent can make any other charges for the conducting the settlement and issuing the title policy, except the title agencies may recoup certain specified out of pocket costs, as approved by the Commonwealth of Pennsylvania.

25.     The original settlement sheet or HUD 1 is kept by the title agents of the Defendant Title Insurers and they are periodically reviewed and audit by the Defendant Title Insurers to verify and approved the charges set forth on the settlement sheets.

26.     Among the charges listed on the settlement sheet are notary fees. The Pennsylvania Legislature, by the Notary Public Law of 1953, authorized the appointment of Notaries Public in the Commonwealth of Pennsylvania. The fees of Notaries Public are set by law and fixed by the Secretary of the Commonwealth with the approval of the Attorney General.  57 P.S. § 147, *et seq.* and 4 Pa. Code § 161.1.

27.     Normally, at a real estate settlement, a Seller is required to have two documents notarized: the acknowledgement of the Deed and the Owner's Title Affidavit.

28.     Normally, a Buyer is required to have the following documents notarized: the acknowledgment of the mortgage (if there is one), and two to three supporting documents required by the lender, and the Buyer's title affidavit.

29.     The Notary fee schedule in effect since February 11, 1984 allows a notary public to charge $2.00 for executing acknowledgments and $1.00 for each additional name. The fee allowed by law for executing affidavits is $2.00.

30.    If there were one Seller involved in a typical real estate settlement the Seller should, under Pennsylvania mandated notary fee schedule, only be charged four ($4.00) dollars for notary fees.

31.    If there were two Sellers involved in a typical real estate settlement then the Seller, under Pennsylvania mandated notary fee schedule, should only be charged five ($5.00) dollars.

32.    If there were one Buyer with a mortgage at a typical real estate settlement then the Buyer, under Pennsylvania mandated notary fee schedule, should only be charged eight ($8.00) dollars for notary fees.

33.    If there were two Buyers with a mortgage at a typical real estate settlement then the Buyers, under Pennsylvania mandated notary fee schedule, should only have been charged nine ($9.00) dollars for notary fees.

34.    With respect consumers who refinance mortgages on their property, they generally are required to only have notarized the acknowledgement for the new mortgage, and two or three supporting affidavits.  Accordingly, if there was only party refinancing, under the Pennsylvania mandated notary fee schedule, the charge should be eight ($8.00) dollars.  There were two parties who were refinancing, the proper charge, under the Pennsylvania mandated fee schedule, should only be nine ($9.00) dollars.

35.    Defendants, through their officers, directors and employees are experts in the field of real estate law and know the correct charges for notarization that should be charged to a consumer at a real estate settlement.  They knew or should have known of the fraud and illegal charges being committed upon consumers at real estate settlements by their employees or the employees of their agents.

**PRIOR LITIGATION**

36.     Previously, a class action was filed in the Federal Court for the Eastern District of Pennsylvania against some of the same defendants in this case.  See Callahan v. Commonwealth Land Title Company, Civ. No. # 88-7656 (E.D. Pa. 1988), and/or Callahan v. Congress Abstract Company, Civ. No. # 88-8319 (E.D. Pa. 1988).  In the Complaint, the Plaintiff class made similar allegations as the ones contained in this Complaint.  Plaintiffs sought both monetary damages and equitable relief against the Defendants.

37.     The following parties were defendants in the cases of Callahan v. Commonwealth Land Title Company, (E.D. Pa #88-7656), and/or Callahan v. Congress Abstract Company, E.D. Pa #88-8319): to wit, Chicago Title Insurance Company, Commonwealth Land Title Insurance Company, and Lawyers Title Insurance Co.  Upon information and belief, it is believed that the other defendant title insurers were aware of these cases and the manner in which they were eventually resolved.

38.     Prior to trying the Callahan case, the defendants and the plaintiffs and plaintiff class entered into a settlement agreement.  This settlement agreement was submitted to the Court.  The Honorable Herbert J. Hutton approved of the terms of the agreement on October 29, 1990.

39.     As part of the agreement, the defendants agreed:

"Each Defendant shall notify each individual who is its officer, director, agent, servant, and employee who also has been or becomes in the future licensed as a notary public by the Commonwealth of Pennsylvania of the proper method of calculating notary fees . . . . "

40.     As part of the settlement agreement, the defendants agreed:

"Each Defendant shall affirmatively advise consumers of the proper charges for notary services . . . by posting conspicuous signs in each of its offices and each room where real estate settlements generally are conducted under such Defendant's auspices the fee schedule set forth in the Act.  In the event the real estate settlement does not take place in a room generally used by such Defendant, such Defendant shall mail or otherwise provide a copy of the fee schedule set forth in the Act, to individuals or entities intending to participate in any real estate settlement conducted under the auspices of such Defendant."

41.    Upon information and belief, Defendants have not notified each individual who is its officer, director, agent, servant, and employee who has been or become licensed as a notary public by the Commonwealth of Pennsylvania of the proper method of calculating notary fees.

42.    Upon information and belief, Defendants have not affirmatively advised consumers of the proper charges for notary services by posting conspicuous signs in each of its offices and each room where real estate settlements generally are conducted under such Defendant's auspices the fee schedule set forth in the Act.  Defendants have also failed to mail or otherwise provide a copy of the fee schedule set forth in the Act, to individuals or entities intending to participate in any real estate settlements conducted under the auspices of such Defendant, where such real estate settlement have not taken place in a room generally used by such Defendant.

43.    The settlement agreement constitutes a contract.  Defendants are in violation of the settlement agreement and subsequent Order of the Court.  Plaintiffs and members of the class of Plaintiffs are third party beneficiaries of the settlement agreement.

## ALLEGATIONS OF SPECIFIC OVERCHARGES

44.    Plaintiffs have specific knowledge concerning the overcharging for notary fees by the title clerks at real estate settlements in the Commonwealth of Pennsylvania. The Defendant Title Insurers and their title agencies throughout the Commonwealth of Pennsylvania not only are aware of these overcharges, but they benefit from the overcharges.

45.    Plaintiffs and members of the class of Plaintiffs believe that the Defendant Title Insurers are in conspiracy with their respective title agents to overcharge consumers who purchase title insurance.  Specifically, Defendant Title Insurers and their respective title agents allow consumers to be overcharged for notary services performed at real estate settlements in violation of federal and state law.

46.    Upon information and belief, Defendant Title Insurers have not only allowed the named Defendant Title Agents to overcharge consumers, but they have not taken any action to prevent their title agents throughout the Commonwealth of Pennsylvania from overcharging.

47.    On September 6, 2002, Plaintiff, Julie Becker, purchased the property located at 14 Monmouth Court in Easton, Pennsylvania 18040.  The settlement was conducted by Defendant ABCO-Abstracting Company of Northampton County as an agent of Conestoga Title Insurance Company.

48.    At settlement, Plaintiff Julie Becker was charged $20.00 for notary fees. Upon information and belief, this represents a significant overcharge because the settlement clerk did not notarize enough documents to justify this charge under Pennsylvania law, specifically 57 P.S. §§ 147, *et seq.*

49.    On October 25, 2001, Plaintiffs, Michael and Sharon Blimm, husband and wife, sold a property located at 309 Twin Oaks Drive in Havertown, Pennsylvania to Regina M. Egoville and Jerome F. Gunpar, Sr. The settlement was conducted by Defendant Aracor Search & Abstract Services, Inc, as an agent of Stewart Title Guaranty Company.

50.    At settlement, the sellers, Plaintiffs, Michael and Sharon Blimm, and buyers in this transaction were both charged $25.00 for notary fees.  Upon information and belief, this represents a significant overcharge because the settlement clerk did not notarize enough documents to justify this charge under Pennsylvania law, specifically 57 P.S. §§ 147, *et seq.*

51.    On November 28, 2001, Joan and Paul Donahue, husband and wife, refinanced the mortgage on their property located at 1088 Edann Road, Oreland, Pennsylvania.  The settlement was conducted by Defendant Savings Abstract Company as an agent of Defendant Commonwealth Land Title Insurance Company.

52.    At settlement, Plaintiffs Paul and Joan Donahue were charged $25.00 for notary fees. Upon information and belief, this represents a significant overcharge because the settlement clerk did not notarize enough documents to justify this charge under Pennsylvania law, specifically 57 P.S. §§ 147, *et seq.*

53.    On February 27, 2002, Plaintiff, Jacquelyne Shines purchased a property located at 7316 Sycamore Avenue, Cheltenham, Pennsylvania.  The settlement was conducted by Defendant  Savings Abstract Company Savings Abstract as an agent of Defendant Commonwealth Land Title Company Insurance Company.

54.    At settlement, Plaintiff Jacquelyne Shines was charged $25.00 for notary fees. Upon information and belief, this represents a significant overcharge because the

settlement clerk did not notarize enough documents to justify this charge under Pennsylvania law, specifically 57 P.S. §§ 147, *et seq.*

55.    On June 15, 2001, Plaintiff, Walter McCall purchased the property located at 3839 Albermarle Avenue, Drexel Hill, PA 19026 from Roberta Host Martin and William R. Host.  The settlement was conducted by Defendant  Abstract Professionals, Ltd. as an agent for Defendant Lawyers Title Insurance Company.

56.    At settlement, Plaintiff Walter McCall was charged $20.00 for notary fees and sellers were charged $15.00 for notary fees.  Upon information and belief, this represents a significant overcharge because the settlement clerk did not notarize enough documents to justify these charges under Pennsylvania law, specifically 57 P.S. §§ 147, *et seq.*

57.    On August 28, 2002, Plaintiffs, Kevin Small and Kirsten Small, husband and wife, purchased the property located at 106 Sabine Avenue in Narberth, Pennsylvania 19072 from Laura Williamson.  The closing was conducted by Defendant Realty Land Transfer, LLC, as an agent for Defendant Fidelity National Title Insurance Company.

58.    At settlement, Plaintiffs Kevin Small and Kirsten Small were charged $25.00 for notary fees and the seller was charged $12.00 for notary fees.  Upon information and belief, this represents a significant overcharge because the settlement clerk did not notarize enough documents to justify these charges under Pennsylvania law, specifically 57 P.S. §§ 147, *et seq.*

59.    On May 28, 2002, Plaintiff, Margaret E. Hildebrandt, sold the property located at 6504 N. 8th Street in Philadelphia, Pennsylvania to Samuel and Karen

Montgomery, husband and wife. The settlement was conducted by Defendant Statewide Abstract Group, Inc., as an agent for Defendant Chicago Title Insurance Company.

60. At settlement, Plaintiff Margaret Hildebrandt was charged $6.00 for notary fees and buyers were charged $25.00 for notary fees. Upon information and belief, this represents a significant overcharge because the settlement clerk did not notarize enough documents to justify these charges under Pennsylvania law, specifically 57 P.S. §§ 147, *et seq.*

61. On December 16, 2002, Plaintiff, Christine C. Burke, purchased a property located at 777 N. 25th Street, Philadelphia, PA 19130 from Nancy E. Delisle and Edward Delisle. The closing was conducted by Defendant Olde City Abstract, Inc., as an agent for Defendant First American Title Insurance Company.

62. At settlement, Plaintiff Christine C. Burke was charged $30.00 for notary fees and the sellers were charged $30.00 for notary fees. Upon information and belief, this represents a significant overcharge because the settlement clerk did not notarize enough documents to justify these charges under Pennsylvania law, specifically 57 P.S. §§ 147, *et seq.*

63. Defendant Title Insurers, in supervising and auditing of settlements conducted by the specific Defendant Title Agents and their title agents throughout the Commonwealth, have allowed title clerks to commit the acts hereinbefore and hereinafter set forth in this Complaint all to the loss of the Plaintiffs and members of the Class of Plaintiffs. In addition to all the other allegations against the Defendants in this suit, Plaintiffs and members of the Class of Plaintiffs believe that the Defendants willfully allowed the title clerks to overcharge for notarizations over a long period of time.

64.     Defendants, Chicago Title Insurance Company, Commonwealth Land Title Insurance Company, and Lawyers Title Company knew or should have known that their title agents were overcharging consumers for notary fees and permitted such practices to continue in direct violation of their obligations as parties to a class action settlement agreement approved by order of the Court in Callahan v. Commonwealth Land Title Company, (E.D. Pa #88-7656) and Callahan v. Congress Abstract Company, E.D. Pa #88-8319).

65.     Plaintiffs and members of the Class of Plaintiffs estimate that the average overcharge for notarizations at real estate settlements by title clerks of agents for Defendant Title Insurers amounts to $20.00 for the Sellers and $15.00 for the Buyers or a total of $35.00 per settlement.  With respect to those refinancing an existing mortgage, upon information and belief, consumers are overcharged an average of $15.00 to $20.00 per closing.

66.     When one takes into account that there are approximately 150 title agency offices in counties of Philadelphia, Bucks, Delaware, Chester and Montgomery and they perform six (6) settlements a day then the illegal charge per day amounts to 6 x $35.00 x 150 offices equals $31,500.00 per day x 5 days per week equals $157,500.00 per week and based upon a 52 week year amounts to in excess of $8,000,000.00 per year.

67.     The Defendant Title Insurers do a substantial portion of the title insurance work in Pennsylvania.  These Defendant Title Insurers have allowed this practice to flourish for many years.  The Defendant Title Insurers are responsible for the actions taken by their title agents under the doctrine of respondeat superior.  The Defendant Title Agents are responsible for the actions taken by their title clerks under the doctrine of respondeat superior.

68.     The Defendants have directly benefited from the overcharging of consumers at real estate settlements.  The overcharging of notary fees was split between the Defendants, their agent, and the title clerks.  By permitting their title clerks to retain overcharges for notary fees, title agents benefit in that they could reduce the compensation paid to their title agents.  Since the title agents' expenses were lessened by the reduced compensation paid to their title clerks, the Defendant Title Insurers economically benefited in their split with their title agents of the all-inclusive title insurance premiums paid at settlements.

69.     If the Defendants prohibited the title clerks from overcharging consumers, they knew that title clerks would have sought higher wages to offset the lost income from the illegal notary charges.  These higher wages would have resulted in increased costs to the title agents, which would have resulted in the title agents seeking to retain as a higher percentage of the title insurance premium from Defendant Title Insurers to compensate for the increased cost, which would result in a smaller percentage of the title insurance premium being retained by the Defendant Title Insurers.  In other words, Defendants ignored the overcharging by their title clerks in order to reduce costs and increase their revenues.

70.     The Defendants because of their knowledge of the fraud committed by the title clerks for a substantial period of time upon consumers have acted intentionally, willfully and maliciously in allowing consumers to be cheated at their real estate settlements.

71.     Plaintiffs believe that this illegal practice of overcharging for notary fees constitutes a conspiracy between Defendants Title Insurers, agent companies of Defendant Title Insurers and the notary public title clerks conducting settlements.

72.     The Plaintiffs and member of the Class of Plaintiffs have been defrauded in this process by the title insurance companies, their agent companies and their title clerks.  The Defendant Title Insurers, their agents, Defendant Title Agents and their employees failed to adequately disclose to customers its practices and procedures concerning charges for notary public fees at the real estate settlements.

73.     The Defendant Title Insurers, their agent companies, and the Defendant Title Agents received consideration from the Plaintiffs and members of the class of Plaintiffs for conducting settlements in the form of an all inclusive premium charge.  In allowing their title clerks/notary publics to overcharge for notary services, the Defendants and their respective agents circumvent the insurance regulations for the Commonwealth of Pennsylvania.

74.     The Defendant Title Insurers and their title agents and the Defendant Title Agents and the settlement clerks are fiduciaries of the Plaintiffs and they owed a fiduciary duty to the Plaintiffs at the real estate settlement.

75.     The Defendant Title Insurers and their agent companies and the Defendant Title Agents, in condoning and allowing excess charges for notary public fees, violated their obligations and duties to Plaintiffs and members of the Class of Plaintiffs, including the duty of good faith.

76.     The Defendant Title Insurers and their agent companies and the Defendant Title Agents in condoning and allowing excess charges by their title clerks for notary public fees have allowed unconscionable and oppressive charges to be imposed upon Plaintiffs and members of the Class of Plaintiffs and Defendants and their agents also engage in unfair, deceptive and misleading business practices.

18

77.     The Defendants are liable to the Plaintiffs and members of the class of Plaintiffs in that they placed the title clerks of the title agencies in a position of trust and responsibility and not only failed to properly supervise such title agents but the Defendants also permitted their title clerks to overcharge consumers.

78.     The action of Defendants, through their settlement clerks, particularly, affected real estate transactions in which agencies of the United States Government guaranteed mortgages of buyers who were overcharged for notary services.

79.     Defendants and their agents allowed this practice of overcharging to take place because they believed that the individual consumer was unable to take any action to prevent the overcharge.  Since the amount of the overcharge was relatively minor in comparison to the entire amount of the transaction, consumers lacked the resources to prevent the overcharge, and these overcharges were more or less hidden in the large numbers associated with real estate transactions.  It is only through a class action that Plaintiffs and members of the class of Plaintiffs can put an end to this practice.


**CLASS ACTION ALLEGATIONS**

80.     The representative Plaintiffs will fairly and adequately assert and protect the interests of the class.

a.  The representative Plaintiffs have no conflicts of interest with absent class members in the maintenance of this action.  Plaintiffs have no present relationship with Defendants other than as an adverse party in this action.

b.  The representative Plaintiffs have retained counsel who is experienced in litigation and who will adequately represent the interests of the class.

81. A class action will provide a fair and efficient method of adjudicating this controversy in that:

a. Common questions of law and fact predominate over any question affecting only individual class members.

b. Neither the size of the class nor any other factor makes it likely that difficulties will be encountered in the management of this action as a class action.

c. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications which might confront defendants with incompatible standards with respect to permissible charges for notary fees incurred during real estate settlements.

d. The prosecution of separate actions by individual class members would create a risk of individual adjudications that would as a practical matter be dispositive of the interests of other class members.

e. The representative Plaintiffs are unaware of any pending litigation commenced by members of the class that involves any of the issues raised in this action.

f. The representative Plaintiffs believe that claims of individual class members will average $15.00-$20.00 and that the claim of no individual class member will exceed $40.00. Given the cost of discovery concerning defendants' practice of overcharging Plaintiffs during real estate settlements over a period of several years, such claims are insufficient in amount to support separate actions.

g. The representative Plaintiffs believe that the class action is superior to other available methods for the fair and efficient adjudication of this controversy.

82. Jurisdiction in this case is based upon Federal Rules of Civil Procedure, Rule 23, 12 U.S.C.A. § 2614, and 28 U.S.C.A. § 1331.

83.    It is the contention of the Plaintiffs and members of the Class of Plaintiffs that the Defendants have violated RESPA, 12 U.S.C.A. § 2603, et seq., and that the Defendants Chicago Title Insurance Company, Commonwealth Land Title Insurance Company, and Lawyers Title Company have failed to comply and continue to fail to comply with the previous class action settlement with regard to overcharging for notary fees as sanctioned and approved by the Court in Callahan v. Commonwealth Land Title Company, Civ. #88-7656, and/or Callahan v. Congress Abstract Company, Civ. #88-8319. Plaintiffs also believe that Defendants have violated both state statutory and common law. Plaintiffs' pendent claims are: the violation of the Notary Public Law, 57 P.S. §§ 147, et seq., Negligent Supervision, Negligent Entrustment, Conspiracy, and Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. C.S.A. § 201.1, et seq.

84.    This action is by the Plaintiffs as a class action under Rule 23 of the Federal Rules of Civil Procedure for general damages, punitive damages, treble damages, injunctive and declaratory relief and relief incident and subordinate thereto, including costs and attorney's fees.

85.    The Class so represented by Plaintiffs in this Action, and of which Plaintiffs are themselves members, consists of consumers who have participated in real estate settlements for sales or refinancing where notary fees where charged. In consideration of payment of an all-inclusive title insurance premium, the Defendant Title Insurers were paid to conduct, through their title agents, an honest and fair real estate closing.

86.    Instead of conducting the real estate settlements in an honest and fair manner the Defendant Title Insurers, their agent companies, and the Defendant Title

Agents have consistently allowed their title clerks to charge consumers for notary fees at real estate settlements in excess of the amounts permitted under Pennsylvania law, specifically 57 P.S. §§ 147, et seq. The Defendant Title Insurers and Defendant Title Agents have not only ignored this practice, but they have directly benefited from their actions.

87.    The exact number of members of the Class of Plaintiffs is in excess of 150,000 members. Plaintiffs do not know the exact number but it should be able to be determined by records kept by the Defendants. These records also will disclose the names and addresses of the class members. In most instances, the members of the Class are unaware of the facts giving rise to these claims or having knowledge of such claims have in the majority of instances sustained damages in such amount that when taken individually are too small to justify the enormous expense and effort required to sue separately. Nevertheless, the damages of the class members as a group are substantial and significant and justify the taking of legal action.

88.    There are common questions of fact in the action that relate to and affect the rights of each member of the class and the relief sought is common to the entire class. The questions are as follows:

a.    Have the Defendants and their agent companies violated RESPA, 12 U.S.C. § 2603 et seq. by condoning and allowing their title clerks to overcharge for notary services performed at real estate settlements where federally related mortgage loans are being granted to Plaintiff buyers or refinancing owners at the settlements?

b.    Have the Defendants and their agent companies conspired to defraud the Plaintiffs and members of the Class, by charging them for notary fees

substantially in excess of the fees allowed by the law of the Commonwealth of Pennsylvania?

      c.    Have the actions of the Defendants as fully set forth in this Complaint given to the Plaintiffs a course of action against the Defendants for negligently supervising their servants, agents and employees?

      d.    Have the Defendant Title Insurers negligently ignored the practice overcharging for notary services provided by its title agents throughout the Commonwealth of Pennsylvania?

      e.    Have the facts set forth in this Complaint established a cause of action for the Plaintiffs and members of the Class of Plaintiffs to obtain Equitable Relief from the Defendants?

      f.    Have the Defendants violated the provisions of the Pennsylvania Unfair Trade Practices and Consumer Protection Law?

      g.    Have the Defendants violated the previous Order of this Honorable Court dated October 29, 1990, specifically the provisions regarding notifying consumers of the correct notary fee permissible under law?

      h.    Have the Defendants violated the previous Order of this Honorable Court dated October 29, 1990, specifically pertaining to the overcharging of notary fees by their agents?

**FIRST COUNT**

**RESPA  12 U.S.C.A. § 2603, *et seq.***

**PLAINTIFFS AND MEMBERS OF THE CLASS OF PLAINTIFFS
v. ALL DEFENDANTS**

    89.    Plaintiffs and members of the Class of Plaintiffs incorporate by reference each and every paragraph of this Complaint as though they were fully set forth herein.

90.    In all cases where a mortgage was granted to any of the Plaintiffs or members of the Class of Plaintiffs, it was a federally guaranteed mortgage loan within the meaning of the Real Estate Settlement Procedures Act, 12 U.S.C.A. § 2603, et seq.

91.    The loans involved in this case for the Plaintiffs and members of the class meet the coverage requirements of RESPA and the corresponding regulations.

92.    Under RESPA, title insurers and their title agents are specifically prohibited from accepting any portion, split or percentage of any charges made for a service rendered at a settlement, other than those charges for services actually performed. A settlement service provider cannot charge a fee where no, nominal, or duplicative work is done, or the fee is in excess of the reasonable value of the goods or facilities provided or the services actually performed.

93.    The Defendants violated RESPA in that the Plaintiffs and members of the class of Plaintiffs have been overcharged for notary fees at real estate settlements.

94.    The financial benefit of the notary overcharges is split between the title insurers, title agents, and settlement clerks.  The title agents are able to pay their settlement clerks a reduced salary since the settlement clerks' income is supplemented by the illegal notary fees.  This reduced labor expense allows the title agents to accept a smaller percentage of the all-inclusive premium for the title insurance policy.  Thus, the Defendant Title Insurers directly benefits from the illegal notary charges, and the consumer is forced to subsidize the business operations of Defendant Title Insurers and their agencies and the Defendant Title Agencies through the imposition of illegal notary charges.

95.    The notary settlement clerks in charging excess amounts for notary fees and splitting such notary fees between what the he is entitled in his official capacity as

notary and the retaining the excess in his capacity as a settlement clerk or in his individual capacity.

96.    In permitting consumers to be charged for notary charges in excess of the rates permitted under Pennsylvania law, Defendants are, in essence, charging consumers for services not performed.  In order to justify the notary charges listed on the settlement sheets, the title clerks would have had to notarize many more documents than those actually notarized.

97.    Plaintiffs and members of the class of Plaintiffs demand damages against the Defendants for the sum of money above the actual notary fees required to be paid at their real estate Settlements, plus any other damages available under the statute.

98.    Plaintiffs and members of the class of Plaintiffs demand that the Defendants be required to pay a reasonable attorney fee to the attorney for Plaintiffs and members of the class of Plaintiffs plus all the costs of this legal action.

<u>SECOND COUNT</u>

<u>BREACH OF THE SETTLEMENT AGREEMENT</u>

<u>PLAINTIFFS AND MEMBERS OF THE CLASS OF PLAINTIFFS
v. DEFENDANTS CHICAGO TITLE INSURANCE, LAWYERS TITLE INSURANCE
AND COMMONWEALTH LAND TITLE INSURANCE COMPANY</u>

99.    Plaintiffs and members of the class of Plaintiffs incorporate by reference each and every paragraph of this Complaint as though the same were set forth herein.

100.    On October 29, 1990, The Honorable Herbert J. Hutton approved of the settlement terms reached in the aforementioned <u>Callahan</u> cases.

101.    The settlement was for the benefit of all future consumers who would be participating in real estate transactions where title insurance was being issued.

102.    Chicago Title Insurance Company, Lawyers Title Insurance Company, and Commonwealth Land Title Insurance Company all pledged to the Court that they would uphold the terms of the settlement.  All three of these defendants had an obligation to insure that its agents followed the terms and conditions of the settlement.

103.    None of these defendants has ever moved to have dismissed, vacated or otherwise nullified the Court approved settlement.

104.    Chicago Title Insurance Company, Lawyers Title Insurance Company, and Commonwealth Land Title Insurance Company have violated the terms of the conditions in the following manner:

a.    Allowing its settlement clerks of it title agents to overcharge consumers notary fees when it had promised to prevent such charges from occurring;

b.    Failing to abide by the notification procedures contained in the settlement agreement.

105.    The Plaintiffs and members of the class of Plaintiffs were the intended beneficiaries of the settlement contract.

106.    Defendants, in ignoring the Court Order, have profited from the notary overcharges, and the Plaintiffs and members of the class of Plaintiffs have suffered a financial loss as a result of the Defendants' actions.

107.    Plaintiffs demand general damages and punitive damages against the Defendants.

108.    Plaintiffs demand reasonable attorney fees and costs against the Defendants.

109.    Plaintiffs and members of the class of Plaintiffs demand treble damages against Defendants.

<u>THIRD COUNT</u>

<u>DEFENDANT LIABILITY PENDENT CLAIM –</u>

<u>NEGLIGENT SUPERVISION AND ENTRUSTMENT</u>

<u>PLAINTIFFS AND MEMBERS OF THE CLASS OF PLAINTIFFS</u>
<u>v. ALL DEFENDANTS</u>

110.    Plaintiffs and members of the class of Plaintiffs incorporate by reference each and every paragraph of this Complaint as though the same were set forth herein.

111.    The Defendant Title Insurers have entered into contracts with title agents. As per this contract, the title agencies are authorized to conduct closings on behalf of the insurers.  The parties then split the premium in accordance with the terms of the contract.

112.    As part of the contract, the title insurers have the right to audit and review settlements conducted by the title agents.

113.    The title agents hire and employ title clerks to conduct the settlements. Title clerks' responsibilities include making sure that each of the charges listed on the HUD-1 are proper.

114.    The Defendant Title Insurers negligently supervised the conduct of their title agents and negligently entrusted these agencies with undue discretion in the charging of notary fees through the following acts or omissions:

(a)    Failure to properly train their title agents with regard to fair, legal, and reasonable charges for notary fees at real estate Settlements;

(b)    Failure to monitor the amount of notary fees charged to Plaintiffs who were parties to real estate transactions;

(c)    Allowing title clerks employed by their agents to charge notary fees that Defendants knew or should have known were excessive;

(d)    Failure to uphold the terms agreed upon in the settlement Order by Judge Hutton in the <u>Callahan</u> class action.

115.    The Defendant Title Agencies negligently supervised the conduct of their title clerks and negligently entrusted these clerks with undue discretion in the charging of notary fees through the following acts or omissions:

(a)    Failure to properly train their title clerks with regard to fair, legal, and reasonable charges for notary fees at real estate Settlements;

(b)    Failure to monitor the amount of notary fees charged to Plaintiffs who were clients at real estate Settlements;

(c)    Allowing title clerks in their employ to charge clients notary fees that Defendants knew or should have known were excessive;

(d)    Failure to uphold the terms agreed upon in the settlement Order by Judge Hutton in the <u>Callahan</u> class action.

116.    The actions of the Defendants in the negligent entrustment and supervision of their title clerks was in violation of Section 317 of the Restatement of Torts (Second) and Pennsylvania law.  Defendants' negligence was the proximate cause of the Plaintiffs being overcharged at real estate Settlements since Defendants know, should have know, or should have foreseen that Plaintiffs were being charged excessive notary fees by employees of the Defendants or agents of the Defendants.

117.    Because of the aforesaid actions of the Defendants, through their agents and/or employees, Plaintiffs and members of the Class of Plaintiffs have been defrauded of their money and property.

118.    Plaintiffs demand general damages and punitive damages against the Defendants.

119.     Plaintiffs demand reasonable attorney fees and costs against the Defendants.

120.     Plaintiffs and members of the class of Plaintiffs demand treble damages against Defendants.

FOURTH COUNT

DEFENDANT LIABILITY PENDENT CLAIM-CONSPIRACY

PLAINTIFFS AND MEMBERS OF THE CLASS OF PLAINTIFFS
v. ALL DEFENDANTS

121.     Plaintiffs and members of the class of Plaintiffs incorporate by reference each and every paragraph of this Complaint as though the same were set forth herein.

122.     The Defendants have acted in conspiracy with intent and malice to defraud the Plaintiffs and members of the class of Plaintiffs by charging them notary fees for notary work not performed at real estate Settlements for a substantial period of time.

123.     The Defendants have acted in a common plan and common purpose to overcharge Plaintiffs and members of the class of Plaintiffs for notary work performed at real estate settlements in violation of the law of the Commonwealth of Pennsylvania.

124.     The Plaintiffs and members of the class of Plaintiffs demand general damages and punitive damages against the Defendants.

125.     The Plaintiffs and members of the Class of Plaintiffs demand damages, the costs of this suit and reasonable attorneys' fees from the Defendants.

FIFTH COUNT

DEFENDANT LIABILITY PENDENT CLAIM – VIOLATION OF PENNSYLVANIA

UNFAIR TRADE PRACTICES AND COMSUNER PROTECTION LAW

PLAINTIFFS AND MEMBERS OF THE CLASS OF PLAINTIFFS
v. ALL DEFENDANTS

126.     Plaintiffs and members of the class of Plaintiffs incorporate by reference each and every paragraph of this Complaint as though the same were set forth herein.

127.     Defendants knew or should have known that the Plaintiffs and members of the class of Plaintiffs were the object of unfair and deceptive business practices in that they were charged excessive notary fees at real estate settlements.

128.     Defendants knew or should have known that Plaintiffs and members of the class of Plaintiffs relied on Defendants to exercise their fiduciary capacity to protect their consumer interest at settlements

129.     In engaging in the practice of overcharging for notary services, and deriving financial gain from these overcharges, Defendants confused, mislead, and/or participated in deceptive business practices.

130.     The aforementioned unfair and deceptive business practices were in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 P.S. section 201-1 et seq.), and said violations of the Act by the Defendants caused the Plaintiffs to be overcharged at real estate settlements to their detriment as consumers.

131.     The violations of the Unfair Trade Practices and Consumer Protection Law include:

a.     Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods and services;

b.     Causing likelihood of confusion or of misunderstanding as to the affiliation, connection or association with, or certification by, another;

c.     Representing that goods and services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has sponsorship, approval, status, affiliation or connection that he does not have;

d.      Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

132.    Because of the aforesaid actions of the Defendants the Plaintiffs and members of the Class of Plaintiffs have been defrauded of their money and property.

133.    Plaintiffs demand treble damages and punitive damages against the Defendants.

134.    Plaintiffs demand reasonable attorney fees and costs against the Defendants.

<u>SIXTH COUNT</u>

<u>DEFENDANT LIABILITY PENDENT CLAIM - EQUITABLE RELIEF</u>

<u>PLAINTIFFS AND MEMBERS OF THE CLASS OF PLAINTIFFS<br>v. ALL DEFENDANTS</u>

135.    Plaintiffs and members of the class of Plaintiffs incorporate by reference each and every paragraph of this Complaint as though the same were set forth herein.

136.    Defendants, through the actions of their title clerks or their agents' title clerks, who served as notaries at real estate settlements, derived substantial benefits to their business by supplying Plaintiff/clients with "in-house" notary services at settlement.

137.    Defendant Title Agents derived financial benefits since they are able to pay their title clerks less money because the title clerks are able to retain as supplemental income the funds derived from overcharging consumers for the notary fees.

138.    Defendant Title Insurers derive financial benefits as a result of this overcharging. Since the defendant title agents do not have to expend additional sums for salaries to their title clerks, Defendant Title Insurers are able to retain a larger percentage of the all inclusive title insurance premiums.

31

139.    Plaintiffs relied on Defendants, as part of the services rendered at settlement, to insure that settlement costs were legally imposed and minimized, and Plaintiffs were not informed of the financial arrangement between the Defendants, their agents and their title clerk notary publics.

140.    Defendants derived an unfair economic benefit from the practice of their title clerks overcharging clients at settlement, to the detriment of the Plaintiffs who rely on Defendants, and these Defendants are liable to Plaintiffs under the equitable doctrines of constructive Trust and unjust enrichment.

141.    Because of the aforesaid actions of the Defendants, Plaintiffs and members of the Class have been defrauded of their money and property.

142.    Plaintiffs seek equitable relief in the following forms:

(a)    An Order from this Court requiring the Defendant Title Insurers to return any notary charges paid at settlements conducted by employees of their title agents that exceeded those permitted under Pennsylvania law;

(b)    An Order from this Court requiring the Defendant Title Agents to return any notary charges paid at settlements conducted by their employees that exceeded those permitted under Pennsylvania law;

(c)    An injunction prohibiting Defendants and their agents and employees from overcharging for notary services in the future; and

(d)    Plaintiffs demand reasonable attorney fees and costs against the Defendants

RELIEF

WHEREFORE, Plaintiffs and the class that they represent and of which they are members pray:

        a.      For an Order determining that this action shall proceed as a Class Action on behalf of the Plaintiff class hereinbefore described.

        b.      For an Order determining that this action shall proceed against the Defendants who allow their agents or their notary public title clerks to overcharge for notary services at real estate settlements.

        c.      For judgment against the Defendants for the amount determined to be owed to Plaintiffs and members of the class of Plaintiffs for overcharges for notary fees at their real estate settlements.

        d.      For civil contempt for those defendants who were previously part of the class action settlement in the aforementioned Callahan cases, and who elected to intentionally ignore the court endorsed terms of the settlement agreement.

        e.      Where appropriate, treble damages for each of the Plaintiffs and members of the class of Plaintiffs.

        f.      Where appropriate, punitive damages for each of the Plaintiffs and members of the class of Plaintiffs.

        g.      For an Injunction prohibiting the practices herein complained of on the part of the Defendants and such preliminary and interlocutory injunctive relief as may be appropriate.

        h.      For costs of suit, including reasonable attorneys' fees, and such other relief as the Court may deem just and proper.

33

_____
Andrew R. Spiegel, Esquire
Attorney for Plaintiffs
Attorney ID# 55617
3901-A Main Street, 2nd Floor
Philadelphia, PA 19127
Tele #:215-483-9800
Fax #: 215-483-2170

Dated: _____